## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JERROLD MASON KILGORE

CRIMINAL CASE NO.

1:11-cr-00518-CAP-RGV

## MAGISTRATE JUDGE'S FINAL REPORT,
## RECOMMENDATION, AND ORDER

Defendant Jerrold Mason Kilgore ("Kilgore") is charged in a three-count superseding indictment with (1) knowingly possessing a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); (2) knowingly and intentionally possessing with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and (3) knowingly and intentionally possessing with the intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). [Doc. 27].[1] Pending before the Court are Kilgore's motions to suppress evidence. [Docs. 15 & 36].[2] Following an evidentiary hearing on Kilgore's motions

---

[1] The listed document and page numbers in citations to the record in this Final Report, Recommendation, and Order refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] Kilgore also filed a motion to suppress statements, [Doc. 14], which was denied as moot on May 8, 2012. See [Doc. 41].

to suppress,[3] the parties filed post-hearing briefs, [Docs. 46, 50, & 55], and the pending motions are ready for ruling.  For the following reasons, it is hereby **RECOMMENDED** that Kilgore's motions to suppress, [Docs. 15 & 36], be **DENIED**.

## I.  STATEMENT OF FACTS

On August 16, 2011, Cobb County Police Officer Josh Lemming ("Officer Lemming") was on routine patrol near the Tia Trace community in Kennesaw, Georgia, when he received a complaint from Mary Rawlings ("Rawlings") that Kilgore was smoking marijuana inside his residence located at 3378 Tia Trace, Kennesaw, Georgia, 30152.  (Tr. at 6-8, 16-17; Gov. Ex. 1).  Based on this information, Officer Lemming contacted Officer Fowler of the Cobb County Police Department, who confirmed that there had been previous complaints about Kilgore's drug-related activities at his residence.[4]  (Tr. at 8, 24-25; Gov. Ex. 1).

Thereafter, Officer Lemming, along with Cobb County Police Officer Sam Rickerson ("Officer Rickerson"), and another Cobb County police officer, decided

---

[3] See [Doc. 43] for a transcript of the evidentiary hearing.  Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at ___)."  In addition, the government submitted exhibits during the hearing, which will be referred to as "(Gov. Ex. ___)."

[4] Specifically, Officer Lemming testified that Officer Fowler informed him that during one encounter with Kilgore at his residence, Kilgore's minor son admitted to flushing cocaine down the toilet before the officer could retrieve it "because he didn't want his daddy to get in trouble."  (Tr. at 25).

to approach Kilgore's residence and perform a "knock and talk." (Tr. at 8, 18, 27).

Officer Lemming approached the front door of the residence, knocked

approximately two to three times, and waited for someone to answer. (Tr. at 8).

After a short amount of time passed, Kilgore opened the door, stepped outside, and

immediately closed the door behind him. (Id.). As Kilgore closed the door, the

officers detected an odor of burnt or burning marijuana emanating from inside the

residence. (Tr. at 8, 18, 21, 36-37).[5]

At this time, Officer Lemming introduced himself, advised Kilgore why he

was there, and informed him that he could smell burnt marijuana. (Tr. at 9, 19).

Kilgore responded, "No, you didn't," at which time Officer Lemming asked Kilgore

for permission to search his residence and Kilgore replied, "F***, no, you ain't

coming in my house." (Tr. at 9, 22, 26). Officer Lemming then asked Kilgore

whether anyone else was present inside the home and Kilgore responded, "My son

and let me go get him." (Tr. at 9, 19). As Kilgore began to retreat back inside the

home, Officer Lemming instructed him to stop, but Kilgore refused to comply and

a "scuffle ensued." (Tr. at 9-10). At this time, Kilgore was handcuffed and placed

---

[5] Officer Lemming testified that he had investigated offenses involving marijuana on previous occasions, that he had received training with respect to such investigations, and that burnt or burning marijuana smelled the same whereas raw marijuana "gives off a different odor." (Tr. at 9, 18). Additionally, Officer Rickerson testified that he also had received training in detecting the odor of marijuana and that burning and burnt marijuana emitted the same odor. (Tr. at 37, 44).

under arrest for misdemeanor obstruction. (Tr. at 9-10, 20, 37). Kilgore then called for his son, who came out of the house, leaving the front door open, and Kilgore instructed him to go to his grandfather's house down the street. (Tr. at 10; Gov. Ex. 1).

Officer Lemming then escorted Kilgore to his patrol vehicle, placed him in the back seat, and returned to the residence in order to close the front door and secure the residence. (Tr. at 10, 12, 38). At this time, Officer Lemming heard "scuffling inside of the house or movement" so he and Officer Rickerson entered the home to conduct a protective sweep for their safety. (Tr. at 10-11, 22, 28). Once inside the home, the officers discovered two unsecured dogs, one of which was a pit bull lying underneath the master bed. (Tr. at 11, 13, 23, 28). Officer Lemming concluded that the dogs were the cause of the noise and the officers exited the residence.[6] (Tr. at 11, 28). Thereafter, Officer Rickerson left the scene in order to obtain a search warrant for the residence while Officer Lemming stayed at the scene with Kilgore. (Tr. at 11-12, 29).

At approximately 6:05 p.m., on August 16, 2011, Officer Rickerson, with the assistance of two officers from the narcotics unit, obtained a search warrant

---

[6] Officers Lemming and Rickerson each testified that their safety was their primary concern during the protective sweep and that they did not observe or search for any narcotics during this initial entry into the residence, which lasted less than one minute. (Tr. at 11, 28-29).

pursuant to O.C.G.A. § 16-13-30(a)[7] for Kilgore's residence from a Cobb County Magistrate.[8]   (Tr. at 38-39, 43, 46; Gov. Ex. 1).   In the affidavit supporting the application for the warrant, Officer Rickerson reported in pertinent part as follows:

> On Friday August 12th, 2011, Cobb Police Officer Bernard arrested Louis Garcia from 3391 Tia Trace . . . for possession of marijuana which resulted from a domestic dispute.  The second party of the incident, [Rawlings], advised Officers Bernard and Fowler that she believed Louis was dealing drugs out of the residence.  At the time of this arrest Rawlings and Garcia were living together at 3391 Tia Trace.
>
> On Tuesday August 16, 2011, Officer Lemming was in the area of 3391 Tia Trace . . . when he was approached by Rawlings.  Rawlings advised Officer Lemming that Garcia was out of jail on bond and had moved all of his drugs from 3391 Tia Trace to 3378 Tia Trace.  Officer Lemming, Officer Oliver, and I went to the address of 3378 Tia Trace on a knock and talk investigation.  Officer Lemming knocked on the front door to the residence and was greeted by [Kilgore]. . . . Upon opening the door Officer Lemming immediately smelled the odor of burning marijuana. After exiting the residence Kilgore quickly closed the front door behind him.  Officer Lemming spoke with Kilgore briefly while I approached the front door.  Officer Lemming advised Kilgore that he smelled the odor of burning marijuana inside the residence and asked for consent to come inside.  Kilgore became verbally abusive and refused consent to come inside.  He also told [Officer] Lemming that his son was inside

---

[7] O.C.G.A. § 16-13-30(a) provides that "it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."  The warrant application and warrant itself specifically noted the offense as a violation of the Georgia Controlled Substances Act for possession under O.C.G.A. § 16-13-30(a).  See (Tr. at 31; Gov. Ex. 1).

[8] Officer Rickerson secured the search warrant via video conferencing with the Cobb County Magistrate, and the government introduced the video recording of Officer Rickerson's application and sworn testimony before the issuing magistrate as an exhibit at the evidentiary hearing.  See (Gov. Ex. 3).

the house. Kilgore then attempted to retreat into his residence. Upon Kilgore opening the front door to the residence I also smelled the odor of burning marijuana. A small child ran out of the house and at Kilgore's command the child ran down the street to his grandfather's house. Officer Lemming attempted to stop Kilgore from entering the residence. All verbal commands from [Officer] Lemming were ignored by Kilgore. Instead Kilgore physically pulled away from [Officer] Lemming all the while attempting to go inside the house. Based on Kilgore's actions we were forced to detain him in handcuffs and arrest him for obstruction.

(Gov. Ex. 1). Officer Rickerson also reported that Kilgore's criminal history revealed that he was a "convicted felon who ha[d] been arrested for obstruction of law enforcement, multiple V.G.C.S.A. charges, and battery." (Id.). Based on these facts, Officer Rickerson sought permission to search for and seize the following:

marijuana, illegal drugs, drug paraphernalia, drug notes, ledgers (either handwritten, or electronically stored; PDA's and/or computers, etc.), phones, smart phones, communications devices, scales, packaging material, fruits of the crime including possessions and currency, pictures and videos of illegal drug activities and correspondences to the suspect showing indicia to the residence.

(Id.).[9]

---

[9] Officer Rickerson testified that he did not provide the issuing magistrate any further information beyond what was included in his affidavit and the application for the search warrant and that he did not rely on anything he observed during the protective sweep in his application for the search warrant. (Tr. at 31-32, 35).

After Officer Rickerson obtained the warrant, he returned to the scene at which time the officers executed the warrant and searched Kilgore's residence.[10] (Tr. at 32). During the execution of the search warrant, officers discovered and seized suspected narcotics, namely, cocaine, marijuana, and MDMA; three scales; two firearms; an unknown amount of United States currency; and a cell phone. (Tr. at 14-16, 31-35, 41, 44; Gov. Ex. 1).

## II. DISCUSSION

Kilgore moves to suppress evidence obtained pursuant to the execution of the search warrant for his residence located at 3378 Tia Trace, Kennesaw, Georgia. [Docs. 36 & 50]. Kilgore contends that the search warrant was not supported by probable cause to believe that evidence of a crime would be found at his residence.[11] The Court will address the merits of his arguments.

_____

[10] At the evidentiary hearing, the government introduced a video recording of the execution of the search warrant, which also showed one of the unrestrained dogs walking around inside the residence. See (Gov. Ex. 2); see also (Tr. at 13). The pit bull, however, had already been removed from the residence by Animal Control prior to the officers' execution of the search warrant. (Tr. at 13-14).

[11] Initially, Kilgore also argued that the suppression of evidence was warranted because the initial search and protective sweep of his residence prior to the issuance of the search warrant was illegal. See [Doc. 15; Doc. 36 at 1-2]. Kilgore's post-hearing brief, however, only addresses his challenges to the search warrant. See [Doc. 50]. Accordingly, the Court will only address this issue and deems any other challenges initially raised by Kilgore's motions, [Docs. 15 & 36], as abandoned.

**A.  Probable Cause to Search Kilgore's Residence**

Kilgore argues that the affidavit submitted in support of the search warrant for his residence failed to establish probable cause to believe that evidence of criminal activity would be found there.  [Doc. 50 at 4-5].  Specifically, Kilgore challenges the affidavit's reliance on Rawlings' statements to Officer Lemming, arguing that the affidavit "does not describe what amount of drugs were moved to the second location, what kind of drugs were moved, why the drugs were moved, how Rawlings came to know about drug dealing at the first location, whether drug dealing continued from the second location, whether Rawlings had any history of providing reliable information, or any other information to corroborate the presence of Garcia's drugs at the second location."  [Id.].  The government responds that the warrant was supported by probable cause, and that the officers sufficiently corroborated information provided by Rawlings to justify reliance on her statements and the officers' own independent investigation to provide probable cause for the search warrant for Kilgore's residence.  [Doc. 55 at 2-4].

Kilgore presents a facial challenge to the validity of the search warrant, and the standard of review on such a challenge is a deferential one.  United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994).  The Eleventh Circuit has summarized the essence of the Court's review as follows:

When called upon by law enforcement officials to determine the legitimacy of search warrants and their supporting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions. In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference. In recognition of the difficulty inherent in discharging this responsibility, reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.

Id. "In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resultant from warrants issued without probable cause, the issuing magistrate 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability" that "an offense has been committed and that evidence exists at the place for which the warrant is requested." Id. at 1361 (alteration in original) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citation omitted).

Probable cause "deal[s] 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Gates, 462 U.S. at 241 (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); see also Adams v. Williams, 407 U.S. 143,

149 (1972). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Miller, 24 F.3d at 1361 (citation omitted); see also United States v. Laughlin, Criminal Action File No. 1:10–CR–113–TWT/AJB, 2012 WL 3065404, at *28 (N.D. Ga. July 6, 2012), adopted by 2012 WL 3065527, at *1 (N.D. Ga. July 27, 2012). Furthermore, "[t]he fact than an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (citations omitted); see also Adams, 407 U.S. at 149 (citation omitted). "Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid." United States v. Schulz, No. 1:10–cr–16–SPM, 2011 WL 738403, at *4 (N.D. Fla. Feb. 24, 2011) (citation and internal marks omitted).

Officer Rickerson stated in his affidavit that Rawlings had previously advised Cobb County police officers that Louis Garcia ("Garcia"), whom she lived with, had been dealing drugs out of their home. (Gov. Ex. 1). Officer Rickerson explained that four days after Rawlings made that statement, she approached Officer Lemming,

who was on routine patrol, and advised him that Garcia had been released from jail and had moved all of his drugs to Kilgore's residence. (Id.). Officer Rickerson further explained that an independent investigation into Rawlings' statements revealed the odor of burning marijuana emanating from Kilgore's residence as he answered the door in response to Officer Lemming's knock. (Id.). Officer Rickerson relayed that Officer Lemming informed Kilgore that he smelled the odor of burning marijuana at which time Kilgore "became verbally abusive" and refused consent for the officers to search his residence. (Id.). Finally, Officer Rickerson averred that he had been a Cobb County police officer since November of 2006, that he was familiar with the odor of burning marijuana based on his training and experience, and that he had smelled the odor of raw and burning marijuana at least 100 times during his career. (Id.). Thus, the affidavit submitted in support of the search warrant application did not simply rely on information provided by Rawlings, but recounted evidence developed independently by the officers and sufficiently recited the qualifications of the affiant to detect the odor of marijuana.

Kilgore contends that the information provided by Rawlings and the odor of burnt marijuana did not establish probable cause to search his residence, asserting that "it only tends to indicate the recent presence of a small amount of marijuana." [Doc. 50 at 4-5]. Kilgore's arguments, however, ignore the fact that the basis for the

warrant for which probable cause was established was possession under O.C.G.A. § 16-13-30(a), see (Gov. Ex. 1), and courts have routinely found probable cause existed to search a residence based on a marijuana odor detected by law enforcement officers, see United States v. Yarbrough, 272 F. App'x 438, 443 (6th Cir. 2007) (per curiam) (unpublished) (citations omitted) ("[A]n officer's detection of the smell of marijuana in a home may by itself establish probable cause," and "[w]hen the smell of marijuana is coupled with [a] [] tip of drug activity, probable cause exists for a search warrant."); United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991) (citation omitted) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.") ; United States v. Harwell, 426 F. Supp. 2d 1189, 1196 (D. Kan. 2006) (citation omitted) ("The odor of burning marijuana emanating from the open front door of a single home would lead a reasonable officer to believe that marijuana was probably present in the residence."); see also Johnson v. United States, 333 U.S. 10, 13 (1948); United States v. Noriega, 676 F.3d 1252, 1261 (11th Cir. 2012); United States v. Cephas, 254 F.3d 488, 495 (4th Cir. 2001); United States v. Kittrell, No. CR 10–2903–TUC–RCC (JCG), 2011 WL 2746252, at *9 (D. Ariz. May 20, 2011), adopted by 2011 WL 2784618, at *1 (D. Ariz. July 13, 2011) (citation omitted); United States v. Neth, No.

6:09–cr–210–Orl–19GJK, 2010 WL 1257695, at *7-8 (M.D. Fla. Mar. 30, 2010); <u>Floyd v. United States</u>, Civil Action No. 3:08cv133–MEF, 2010 WL 1052839, at *7 (M.D. Ala. Feb. 18, 2010), adopted by 2010 WL 1197707, at *1 (M.D. Ala. Mar. 23, 2010); <u>United States v. Murat</u>, No. 08–20479–CR, 2008 WL 4394788, at *13 (S.D. Fla. Sept. 26, 2008), adopted at *1; <u>United States v. Correa</u>, No. 1:07-cr-00011-MP-AK, 2008 WL 1804309, at *12 (N.D. Fla. Apr. 18, 2008).  In short, the totality of the circumstances presented in the affidavit, when taking a "realistic and commonsense approach" and not viewing the affidavit in a "hypertechnical manner," established probable cause for the search warrant for Kilgore's residence for the crime of unlawful possession of marijuana.  <u>Miller</u>, 24 F.3d at 1361 (citation omitted).

**B.**   <u>**Scope of the Items Seized Pursuant to the Search Warrant**</u>

Kilgore argues that even if the affidavit established probable cause to justify a search of his residence, it did not include facts or evidence to support the seizure of "many items described."  [Doc. 50 at 6].  In particular, Kilgore argues that there is no "information to suggest that any distribution activities were taking place at [Kilgore's residence], nor is there any information to suggest that contraband such as records, ledgers, communication devices, and other such items are likely to be found at [Kilgore's residence]."  [<u>Id.</u>].  Kilgore specifically complains about the seizure of a cell phone from his residence and asserts that "the issuance of the

warrant authorizing the seizure of such items lacked probable cause, tainting the subsequent seizure of the cell phone." [Id.].

"The scope of the warrant, and the search, is limited by the extent of probable cause. . . . [P]robable cause must exist to seize all items of a particular type described in the warrant, and [t]hus, the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant." United States v. Pineda, Criminal Case No. 1:11–CR–00006–CAP–JFK, 2012 WL 2906758, at *6 (N.D. Ga. June 4, 2012), adopted by 2012 WL 2907447, at *1 (N.D. Ga. July 16, 2012) (alterations in original) (citations and internal marks omitted). In other words, "[b]readth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." Id. (citation and internal marks omitted). However, even if the Court finds that "the portion of the search warrant authorizing a search for items related to the sale and distribution of [marijuana] is constitutionally overbroad, suppression is not warranted." United States v. Reno, 196 F. Supp. 2d 1150, 1161 (D. Kan. 2002). Indeed, "[w]here a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant considered valid." Id. (citations omitted); see also United States v. Brown, 374 F. App'x 927, 937-37 (11th Cir. 2010) (per curiam) (unpublished) ("The remedy for overbreath in a warrant is

severance . . ."). "In such cases, only those items confiscated under the overbroad portion of the warrant are suppressed." Reno, 196 F. Supp. 2d at 1161 (citation and internal marks omitted).

Although Kilgore contends that probable cause was lacking for the seizure of items such as records, ledgers, and communication devices, including any cell phones and computers, see [Doc. 50 at 6-7], a cell phone was the only item actually seized that falls under the category of items challenged by Kilgore, see (Gov. Ex. 1). Thus, as to the other items included in the search warrant that Kilgore challenges as being overly broad, his motion is due to be denied as moot since there is nothing to suppress. See Hardy v. United States, Nos. 1:08–CV–90027 WLS, 1:05–CR–22 WLS, 2008 WL 8126040, at *3 (M.D. Ga. Oct. 14, 2008), adopted by 2010 WL 4260212, at *3 (M.D. Ga. Oct. 21, 2010) (citation omitted) (Even "[a]ssuming _arguendo_ that there was an illegal search . . ., nothing was seized which could have constituted 'fruit of the poisonous tree' to be suppressed . . ."). As for the cell phone, even assuming, without deciding, that the search warrant exceeded the scope of probable cause by authorizing the seizure of the cell phone at issue, suppression would still not be warranted in this case under the good faith exception.

C.    **Good Faith Exception**

Under United States v. Leon, 468 U.S. 897 (1984), "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." United States v. Gamory, Criminal File No. 1:08–CR–153–TWT, 2009 WL 855948, at *23 (N.D. Ga. Mar. 30, 2009), adopted at *1 (citations and internal marks omitted); see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003); United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002). Good faith is an objective standard judged by what a reasonable law enforcement officer would perceive under the circumstances, not a standard judged by a legally trained magistrate or judge. United States v. Taxacher, 902 F.2d 867, 871-72 (11th Cir. 1990) (citations omitted) (quoting Leon, 468 U.S. at 922 & n.23).

"'[A] reviewing court may look outside the four corners of the affidavit in determining whether an officer acted in good faith when relying upon an invalid warrant.'" Schulz, 2011 WL 738403, at *5 (alteration in original) (quoting Martin, 297 F.3d at 1309). There are four situations where the exception does not apply: (1) where, depending upon the circumstances of the particular case, a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid;

(2) where the magistrate in issuing a warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (3) where the issuing magistrate wholly abandoned his judicial role; and (4) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  <u>Martin</u>, 297 F.3d at 1313.

Kilgore's argument that the good faith exception is inapplicable centers around his contention that the issuing magistrate was misled by information in the affidavit because Officer Rickerson failed to include facts regarding the officers' initial entry into the residence to conduct a protective sweep and whether there was a continuing "presence of a marijuana odor inside the residence after Kilgore's arrest."  [Doc. 50 at 8].  However, Officers Lemming and Rickerson testified that officer safety was their concern during the protective sweep and they did not search for any narcotics during this initial entry into the residence, which lasted less than one minute.  (Tr. at 11, 28-29).  Also, the officers did not rely on anything they observed from the initial protective sweep in presenting the search warrant application and thus in no way misled the issuing magistrate with regard to the omission of this information.

While Kilgore asserts that "it is curious that the officers presented no testimony to this court whether their initial perceptions [i.e., the presence of marijuana odor] were confirmed when they actually stepped inside the house," [Doc. 50 at 8], he overlooks the fact that neither officer was asked during direct or cross examination at the evidentiary hearing if they continued to smell the odor of marijuana during the protective sweep, see generally [Doc. 43]. However, the officers clearly testified that they detected the odor of marijuana emanating from inside the residence after Kilgore initially responded to their knocks at the door, see (Tr. at 8, 18, 21, 36-37), and this information, which provided probable cause, was included in the affidavit in support of the search warrant application, see (Gov. Ex. 1). Officer Rickerson "did not include any false information in support of the application for search warrant, and the information . . . which [Kilgore] assert[s] should have been included in the affidavit was not intentionally omitted with the intent to mislead and would not have affected the magistrate's determination of probable cause." Schultz, 2011 WL 738403, at *6. "The applicability of the good faith exception does not turn on what is absent from the affidavit but on what is present." Harwell, 426 F. Supp. 2d at 1198.

To the extent Kilgore asserts that the officers' reliance on the issuing magistrate's probable cause determination was not objectively reasonable since the

scope of the items to be seized, including any cell phones, exceeded the scope for which probable cause was established, the Court rejects this argument because the Eleventh Circuit has applied the good faith exception to a search warrant under circumstances similar to the facts presented here. <u>See</u> <u>United States v. Vasquez-Padilla</u>, 330 F. App'x 883, 886-88 (11th Cir. 2009) (per curiam) (unpublished).

In <u>Vasques-Padilla</u>, an officer responded to an apartment to locate a missing juvenile and entered the apartment once he was advised that the juvenile was inside. <u>Id.</u> at 885. After the officer entered the apartment, he detected a strong odor of marijuana and observed a small amount of "green marijuana within plain view" and, after the defendant refused consent to search the apartment, the officer applied for and obtained a search warrant for the apartment. <u>Id.</u> The issuing magistrate authorized the officers to search the premises for "marijuana, proceeds of illegal drug trafficking, telephone numbers or photographs related to illegal drug trafficking, [and] illegal drug paraphernalia used to compound harvest, manufacture, store, package, smuggle, transport, distribute, or use/ingest illegal controlled substances." <u>Id.</u> (internal marks omitted). In his motion to suppress, the defendant argued, among other things, that the search of his apartment was unlawful because "the search warrant affidavit, by relying solely on a general smell of marijuana and the presence of an amount of marijuana suitable for personal use

only, did not provide the magistrate with a substantial basis for determining whether there was probable cause to believe that he was engaged in a pattern of illegal drug activity." Id. at 886. He also argued that the search warrant was overly broad because it "encompassed all aspects of a drug trafficking operation even though the affidavit did not specifically allege drug trafficking, describe a pattern of criminal activity, or show probable cause for believing that the entire apartment contained evidence of drug trafficking." Id. The Eleventh Circuit upheld the district court's denial of the defendant's motion to suppress based on the defendant's lack of standing to challenge the search, see id. at 886-88, but noted that even if the defendant had standing to challenge the search, his arguments with regard to the search warrant were without merit since "even assuming the warrant was overly broad, the officers acted in good faith in relying on the warrant because it was not so overly broad on its face that the executing officers could not reasonably have presumed it to be valid," id. at 888 n.4 (citation and internal marks omitted).

As in Vasques-Padilla, the search warrant here was not so overly broad that the officers could not reasonably have presumed it to be valid. Id.; see also United States v. Kruse, No. CR 11–2019, 2011 WL 1871237, at *5, 10 (N.D. Iowa May 16, 2011), adopted by 2011 WL 2413667, at *2 (N.D. Iowa June 13, 2011). Even more so than in Vasques-Padilla, the officers here had an objectively reasonable basis to

believe that the warrant was valid since, unlike in that case, the affidavit submitted in support of the search warrant presented information about possible drug trafficking activity connected to the residence in that the officers initially went to Kilgore's residence to investigate a report that Garcia had moved drugs that he was dealing from his residence to Kilgore's residence, and when Kilgore, who had prior violations of state drug laws, opened the door of the residence, the officers smelled the odor of burnt marijuana, but when confronted about the odor, Kilgore denied it and got into an altercation with the officers as he tried to reenter the residence. See (Gov. Ex. 1). Moreover, although not included in the affidavit, the officers also had knowledge of previous complaints about Kilgore's drug-related activities at his residence, including an incident when Kilgore's minor son admitted to flushing cocaine down the toilet before the officer could retrieve it. (Tr. at 25); see United States v. Bridges, 347 F. App'x 459, 463 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted) ("[Investigator's] affidavit and the additional facts known to him that were omitted from the affidavit contained enough indicia of probable cause to determine that his reliance on the warrant was reasonable.").

Under these circumstances, even though the application for the search warrant simply stated that there was probable cause to believe that evidence of possession of marijuana would be located in the residence, since the search warrant

itself specifically authorized the officers to search for and seize cell phones as well as "pictures and videos of illegal drug activities," (Gov. Ex. 1), and "pictures and videos of illegal drug activities" including possession of marijuana could be stored on a cell phone, see United States v. Aguirre, 664 F.3d 606, 615 (5th Cir. 2011) (upholding seizure of cell phones even though not specifically listed in search warrant because cell phones could hold the equivalent of records and documentation of drug activity authorized to be seized by the warrant), it was reasonable for the executing officers to believe that there was probable cause for the provision in the warrant authorizing the seizure of cell phones from Kilgore's residence based on a common-sense consideration of the facts set forth in the affidavit and known to the officers, see Vasquez-Padilla, 330 F. App'x at 888 n.4; Bridges, 347 F. App'x at 463; United States v. Lebowitz, 647 F. Supp. 2d 1336, 1355-56 (N.D. Ga. 2009), adopted at 1342.

## III. CONCLUSION

For the foregoing reasons and cited authority, it is hereby **RECOMMENDED** that Kilgore's motions to suppress, [Docs. 15 & 36], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 13th day of September, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE